**NIGHT BOX**
**FILED**

AUG - 5 2005

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80457-CIV-RYSKAMP/VITUNAC

ROBERT FRISKNEY,                          )
Plaintiff/Counter-Defendant,              )
                                          )
v.                                        )
                                          )
AMERICAN PARK & PLAY, INC.,               )
a Florida corporation                     )
Defendant/Counter-Plaintiff and          )
WAYNE CULBERTSON, individually, and       )
BETH CULBERTSON, individually,            )
Defendants.                               )
_____          )
                                          )
AMERICAN PARK & PLAY, INC.                )
Third-Party Plaintiff,                    )
                                          )
v.                                        )
                                          )
MELISSA FRISKNEY,                         )
Third-Party Defendant.                    )
_____          )

## DEFENDANT/COUNTER-PLAINTIFF AMERICAN PARK & PLAY, INC.'S MOTION TO COMPEL PLAINTIFF/COUNTER-DEFENDANT ROBERT FRISKNEY AND DEFENDANT MELISSA FRISKNEY TO PRODUCE DOCUMENTS REQUESTED IN REQUESTS 1 THOUGH 15 OF SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 26.1.H of the

Local Rules of the United States District Court for the Southern District of Florida, Defendant

American Park & Play, Inc. (hereinafter referred to as "American Park & Play") moves to compel

Plaintiff/Counter-Defendant Robert Friskney and Defendant Melissa Friskney (hereinafter

collectively referred to as "Friskney") to produce the documents requested in Requests 1, 2, 3, 4,



1

5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 of American Park & Play's Second Set of Requests For Production Of Documents.

American Park & Play's interrogatories are attached hereto as Exhibit "1." Friskney's responses are attached hereto as Exhibit "2." American Park & Play's counterclaim is attached hereto in pertinent part as Exhibit "3." The Affidavit of Eric Persyns in support of this motion is attached hereto as Exhibit "4."

Pursuant to Local Rule 26.1.I, the undersigned counsel has in good faith conferred with counsel for Friskney to resolve the issues of this motion to compel, but no resolution could be reached.

## ARGUMENT

In this motion, American Park & Play requests production of three categories of documents:

(1)     documents (in Request 1) relating to this case which Friskney obtained from non-parties to this case;

(2)     documents (in Requests 2 – 11) showing the financial net worth of Robert and Melissa Friskney, in support of American Park & Play's claims for punitive damages; and

(3)     documents (in Requests 3 – 12) supporting or relating to the Friskney's affirmative defenses and denials of the allegations of American Park & Play's counterclaim.

The following addresses each of the respective document requests, responses, and arguments:

**Request 1 requests the following**:

All documents relating to this case, which were obtained from non-parties to this case.

**Friskney responded as follows:**

Objection, this request seeks work-product privileged information.  Notwithstanding said objection, all documents obtained in response to subpoenas to third parties, if any, will be produced upon receipt.

**American Park & Play's argument regarding Request 1:**

Mr. and Mrs. Friskney refuse to produce documents, relating to this case, which they obtained from non-parties to this case, and justify their refusal on the grounds of work-product.  They state they will only produce such documents if they had obtained them *by means of a subpoena,* but if they acquired such documents by any other means they are off limits from American Park & Play's discovery process.  The party asserting the work product doctrine has the burden of demonstrating that the subject documents are work product.  Gulf Islands Leasing v. Bombardier Capital, 215 F.R.D. 466 (S.D.N.Y. 2003).  Friskney produced no privilege log, required under Local Rule 26.1.G.3(b)(ii)(A).  Furthermore, even if Friskney produced a privilege log, withholding production of such documents is incorrect.  Rule 26(b)(3), Federal Rules of Civil Procedure, codifies the work-product doctrine, and states it applies only to documents prepared in anticipation of litigation.  Requesting documents Friskney obtained from third parties does not appear to be actually prepared in anticipation of litigation, and in any event, Friskney was obligated to provide a privilege log so that the applicability of the work product doctrine could be determined.  Such documents are relevant and necessary to American Park & Play's defense in this case because Friskney has referred to third-party documents to support his contention he was employed by American Park & Play.  American Park & Play must be allowed to have copies of those documents to defend itself in this case.

**Request 2 requests the following:**

For the period January 1, 2003 through the present, all statements of accounts from any financial institution (including, but not limited to, banks, stock brokerage accounts, any securities account, etc.) regarding Robert Friskney.

**Friskney responded as follows:**

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

**American Park & Play's argument regarding Request 2:**

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990). While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious." See, e.g., Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4. Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

### Request 3 requests the following:

For the period January 1, 2003 through the present, all statements of accounts from any financial institution (including, but not limited to, banks, stock brokerage accounts, any securities account, etc.) regarding Melissa Friskney.

### Friskney responded as follows:

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

### American Park & Play's argument regarding Request 3:

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial

statements and tax returns." <u>Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.</u>, 130

F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990).  While a plaintiff is not entitled to engage in

financial net worth discovery merely by stating a claim for punitive damages, discovery regarding

a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages

is not "viable" or "not supurious."  <u>See</u>, <u>e.g.</u>, <u>Blount v. Wake Elec. Membership Corp.</u>, 162

F.R.D. 102, 105 (E.D.N.C. 1993); <u>Horizon Holdings</u>, <u>supra</u>, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are

"viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as

Exhibit 4.  Persyns' Affidavit provides factual support for American Park & Play's counterclaim,

including the fact that both Robert and Melissa Friskney, at their own house, were together

cognizant of and actively participated in their fraudulent kick-back scheme against American

Park & Play.

**Request 4 requests the following**:

For the period January 1, 2003 through the present, all documents showing, reflecting, or
relating to all real property owned (whether owned fully or partly) by Robert Friskney.

**Friskney responded as follows**:

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably
calculated to lead to the discovery of admissible evidence. Futher, this Request is only
intended to harass and embarrass Plaintiff and Third Party Defendant.

**American Park & Play's argument regarding Request 4**:

American Park & Play is entitled to discovery of Friskney's financial net worth because

American Park & Play has pled its claim for punitive damages against Robert and Melissa

Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American

Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the

Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990). While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious." See, e.g., Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4. Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

**Request 5 requests the following:**

For the period January 1, 2003 through the present, all documents showing, reflecting, or relating to all real property owned (whether owned fully or partly) by Melissa Friskney.

**Friskney responded as follows:**

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

**American Park & Play's argument regarding Request 5:**

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990). While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious." See, e.g., Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4. Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together

cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

### Request 6 requests the following:

For the period January 1, 2003 through the present, all documents showing or reflecting the assets owned (in whole or in part) by Robert Friskney by asset type (including but not limited to all businesses owned (wholly owned or partially owned), stocks, bonds, mutual funds, any other securities, all financial instruments, cash, real property, art, furniture, collectible items, automobiles, insurance policies, all tangible property, and all intangible property).

### Friskney responded as follows:

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

### American Park & Play's argument regarding Request 6:

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990). While a plaintiff is not entitled to engage in

financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious."  See, e.g., Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4.  Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

**Request 7 requests the following:**

For the period January 1, 2003 through the present, all documents showing or reflecting the assets owned (in whole or in part) by Melissa Friskney by asset type (including but not limited to all businesses owned (wholly owned or partially owned), stocks, bonds, mutual funds, any other securities, all financial instruments, cash, real property, art, furniture, collectible items, automobiles, insurance policies, all tangible property, and all intangible property).

**Friskney responded as follows:**

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

**American Park & Play's argument regarding Request 7:**

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the

Court's March 28, 2005 Order.  A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages.  <u>Palmquist v. Piper Aircraft Corp.</u>, 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); <u>Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.</u>, 209 F.R.D. 208, 216 (D. Kan. 2002).  "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns.'  <u>Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.</u>, 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990).  While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious."  <u>See</u>, <u>e.g.</u>, <u>Blount v. Wake Elec. Membership Corp.</u>, 162 F.R.D. 102, 105 (E.D.N.C. 1993); <u>Horizon Holdings</u>, <u>supra</u>, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4.  Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

**Request 8 requests the following:**

For the period January 1, 2003 through the present, all documents showing or reflecting the assets owned (in whole or in part) by Robert and Melissa Friskney by asset type (including but not limited to all businesses owned (wholly owned or partially owned), stocks, bonds, mutual funds, any other securities, all financial instruments, cash, real property, art, furniture, collectible items, automobiles, insurance policies, all tangible property, and all intangible property).

**Friskney responded as follows:**

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

**American Park & Play's argument regarding Request 8:**

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990). While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious." See, e.g., Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4. Persyns' Affidavit provides factual support for American Park & Play's counterclaim,

including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

### Request 9 requests the following:

For the period January 1, 2003 through the present, all documents showing or reflecting the liabilities of Robert Friskney.

### Friskney responded as follows:

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

### American Park & Play's argument regarding Request 9:

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the Court's March 28, 2005 Order.  A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages.  Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002).  "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990).  While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages

is not "viable" or "not supurious." See, e.g., Blount v. Wake Elec. Membership Corp., 162

F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are

"viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as

Exhibit 4. Persyns' Affidavit provides factual support for American Park & Play's counterclaim,

including the fact that both Robert and Melissa Friskney, at their own house, were together

cognizant of and actively participated in their fraudulent kick-back scheme against American

Park & Play.

### Request 10 requests the following:

For the period January 1, 2003 through the present, all documents showing or reflecting
the liabilities of Melissa Friskney.

### Friskney responded as follows:

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably
calculated to lead to the discovery of admissible evidence. Futher, this Request is only
intended to harass and embarrass Plaintiff and Third Party Defendant.

### American Park & Play's argument regarding Request 10:

American Park & Play is entitled to discovery of Friskney's financial net worth because

American Park & Play has pled its claim for punitive damages against Robert and Melissa

Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American

Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the

Court's March 28, 2005 Order. A plaintiff that is entitled to recover punitive damages may

discover a defendant's financial net worth and documents, in that the financial circumstances of a

defendant are relevant to the issue of damages. Palmquist v. Piper Aircraft Corp., 757 F.Supp.

1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D.

208, 216 (D. Kan. 2002). "The party seeking discovery generally 'need not establish a *prima*

*facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." <u>Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.</u>, 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990). While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious." <u>See</u>, <u>e.g.</u>, <u>Blount v. Wake Elec. Membership Corp.</u>, 162 F.R.D. 102, 105 (E.D.N.C. 1993); <u>Horizon Holdings</u>, <u>supra</u>, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4. Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

### Request 11 requests the following:

For the period January 1, 2003 through the present, all documents showing or reflecting the liabilities of Robert and Melissa Friskney.

### Friskney responded as follows:

Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Futher, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

### American Park & Play's argument regarding Request 11:

American Park & Play is entitled to discovery of Friskney's financial net worth because American Park & Play has pled its claim for punitive damages against Robert and Melissa Friskney in Count 7 and against Robert Friskney individually in Counts 1 and 3 of American Park & Play's counterclaim, and the foregoing counts have survived a motion to dismiss in the

Court's March 28, 2005 Order.  A plaintiff that is entitled to recover punitive damages may discover a defendant's financial net worth and documents, in that the financial circumstances of a defendant are relevant to the issue of damages.  Palmquist v. Piper Aircraft Corp., 757 F.Supp. 1411, 1412 (N.D. Ga. 1991); Horizon Holdings, L.L.C. v. Genmar Holdings, Inc., 209 F.R.D. 208, 216 (D. Kan. 2002).  "The party seeking discovery generally 'need not establish a *prima facie* case of punitive damages before it can obtain pretrial discovery of a defendant's financial statements and tax returns." Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 152 (D. Kan. 149, 152 (D. Kan. 1990).  While a plaintiff is not entitled to engage in financial net worth discovery merely by stating a claim for punitive damages, discovery regarding a defendant's financial net worth if a plaintiff has demonstrated that a claim for punitive damages is not "viable" or "not supurious."  See, e.g., Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105 (E.D.N.C. 1993); Horizon Holdings, supra, 209 F.R.D. at 216.

Additional support for the fact American Park & Play's claims for punitive damages are "viable" and "not spurious" is reflected in the Affidavit of Eric Persyns, attached hereto as Exhibit 4.  Persyns' Affidavit provides factual support for American Park & Play's counterclaim, including the fact that both Robert and Melissa Friskney, at their own house, were together cognizant of and actively participated in their fraudulent kick-back scheme against American Park & Play.

### Request 12 requests the following:

All documents supporting Melissa Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against her.

### Friskney responded as follows:

Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the said objections, see documents previously produced in discovery.

16

**American Park & Play's argument regarding Request 12:**

The documents requested are highly relevant to the subject matter of this case, because they directly address Defendant Melissa Friskney's defenses to this case.  The evidence obtained from Manzella is relevant, from the point of view of admissible evidence at trial and from the broad definition of "relevant" under the Federal Rules of Civil Procedure.  Rule 26(b)(1), Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter … that is relevant to the claim or defense of any party."  Further, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  When discovery appears relevant on its face, the party resisting discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined in Fed.R.Civ.P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  Scott v. Leavenworth Unified School Dist., 190 F.R.D. 583, 585 (D.Kan. 1999).  Because such a showing cannot be made, American Park & Play requests that the objections be overruled and the requested documents be ordered to be produced.

**Request 13 requests the following:**

All documents relating to Melissa Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against her.

**Friskney responded as follows:**

Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the said objections, see documents previously produced in discovery.

**American Park & Play's argument regarding Request 13:**

The documents requested are highly relevant to the subject matter of this case, because they directly address Defendant Melissa Friskney's defenses to this case.  When discovery appears relevant on its face, the party resisting discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined in Fed.R.Civ.P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  Scott v. Leavenworth Unified School Dist., 190 F.R.D. 583, 585 (D.Kan. 1999).  Because such a showing cannot be made, American Park & Play requests that the objections be overruled and the requested documents be ordered to be produced.

### Request 14 requests the following:

All documents supporting Robert Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against her.

### Friskney responded as follows:

Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the said objections, see documents previously produced in discovery.

### American Park & Play's argument regarding Request 14:

The documents requested are highly relevant to the subject matter of this case, because they directly address Plaintiff/Counter-Defendant Robert Friskney's defenses to this case.  When discovery appears relevant on its face, the party resisting discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined in Fed.R.Civ.P. 26(b)(1); or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.  Scott v. Leavenworth Unified School Dist., 190

F.R.D. 583, 585 (D.Kan. 1999). Because such a showing cannot be made, American Park & Play

requests that the objections be overruled and the requested documents be ordered to be produced.

### Request 15 requests the following:

All documents relating to Robert Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against her.

### Friskney responded as follows:

Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding and without waiving the said objections, see documents previously produced in discovery.

### American Park & Play's argument regarding Request 15:

The documents requested are highly relevant to the subject matter of this case, because

they directly address Plaintiff/Counter-Defendant Robert Friskney's defenses to this case. When

discovery appears relevant on its face, the party resisting discovery has the burden to establish

facts justifying its objections by demonstrating that the requested discovery (1) does not come

within the scope of relevance as defined in Fed.R.Civ.P. 26(b)(1); or (2) is of such marginal

relevance that the potential harm occasioned by discovery would outweigh the ordinary

presumption in favor of broad disclosure. Scott v. Leavenworth Unified School Dist., 190

F.R.D. 583, 585 (D.Kan. 1999). Because such a showing cannot be made, American Park & Play

requests that the objections be overruled and the requested documents be ordered to be produced.

**WHEREFORE,** American Park & Play requests that Plaintiff/Counter-Defendant Friskney and Defendant Melissa Friskney be compelled to to produce the documents requested in Requests 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 of American Park & Play's Second Set of Requests For Production Of Documents.

Respectfully submitted,

PETER T. MAVRICK, P.A.
Attorney for Defendant
American Park & Play, Inc.
and Defendants Beth and Wayne Culbertson
2881 East Oakland Park Boulevard
Fort Lauderdale, Florida 33306
Telephone:  (954) 564-2246
Facsimile:   (954) 523-2226

BY: _____
Peter T. Mavrick
FL Bar No.: 0083739

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served this 8th day of August, 2005, by hand-delivery to Stuart A. Rosenfeldt, Esq. and Alana D. Cappello, Esq., 300 S.E. Second Street, Suite 860, Fort Lauderdale, Florida  33301.

_____
Peter T. Mavrick
FL Bar No.: 0083739

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80457-CIV-RYSKAMP/VITUNAC

ROBERT FRISKNEY,                          )
Plaintiff/Counter-Defendant,              )
                                          )
v.                                        )
                                          )
AMERICAN PARK & PLAY, INC.,               )
a Florida corporation                     )
Defendant/Counter-Plaintiff and          )
WAYNE CULBERTSON, individually, and       )          **EXHIBIT** ___
BETH CULBERTSON, individually,            )
Defendants.                               )
_____           )
                                          )
AMERICAN PARK & PLAY, INC.                )
Third-Party Plaintiff,                    )
                                          )
v.                                        )
                                          )
MELISSA FRISKNEY,                         )
Third-Party Defendant.                    )
_____           )

**DEFENDANT/COUNTER-PLAINTIFF AMERICAN PARK & PLAY, INC.'S SECOND
SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO
PLANTIFF/COUNTER-DEFENDANT ROBERT FRISKNEY AND DEFENDANT
MELISSA FRISKNEY**

Defendant/Counter-plaintiff American Park & Play, Inc. (hereinafter referred to as

"American Park & Play") pursuant to Federal Rule of Civil Procedure 34, requests

Plaintiff/Counter-defendant Robert Friskney and Defendant Melissa Friskney, to produce and/or

permit the inspection and/or copying of those documents hereinafter designated.  American Park

& Play further requests that said documents be produced for inspection and copying within the time provided by the Rules at the office of American Park & Play's counsel, PETER T. MAVRICK, ESQ., 2881 East Oakland Park Boulevard, Fort Lauderdale, Florida 33306, or at such other place as may be agreed upon by counsel, continuing from day to day until inspection and copying are completed.

1. All documents relating to this case, which were obtained from non-parties to this case.

2. For the period January 1, 2003 through the present, all statements of accounts from any financial institution (including, but not limited to, banks, stock brokerage accounts, any securities account, etc.) regarding Robert Friskney.

3. For the period January 1, 2003 through the present, all statements of accounts from any financial institution (including, but not limited to, banks, stock brokerage accounts, any securities account, etc.) regarding Melissa Friskney.

4. For the period January 1, 2003 through the present, all documents showing, reflecting, or relating to all real property owned (whether owned fully or partly) by Robert Friskney.

5. For the period January 1, 2003 through the present, all documents showing, reflecting, or relating to all real property owned (whether owned fully or partly) by Melissa Friskney.

6. For the period January 1, 2003 through the present, all documents showing or reflecting the assets owned (in whole or in part) by Robert Friskney by asset type (including but not limited to all businesses owned (wholly owned or partially owned), stocks, bonds, mutual funds, any other securities, all financial instruments, cash, real property, art, furniture, collectible items, automobiles, insurance policies, all tangible property, and all intangible property).

7. For the period January 1, 2003 through the present, all documents showing or reflecting the assets owned (in whole or in part) by Melissa Friskney by asset type (including but not limited to all businesses owned (wholly owned or partially owned), stocks, bonds, mutual funds, any other securities, all financial instruments, cash, real property, art, furniture, collectible items, automobiles, insurance policies, all tangible property, and all intangible property).

8. For the period January 1, 2003 through the present, all documents showing or reflecting the assets owned (in whole or in part) by Robert and Melissa Friskney by asset type (including but not limited to all businesses owned (wholly owned or partially owned), stocks, bonds, mutual funds, any other securities, all financial instruments, cash, real property, art, furniture, collectible items, automobiles, insurance policies, all tangible property, and all intangible property).

9. For the period January 1, 2003 through the present, all documents showing or reflecting the liabilities of Robert Friskney.

10. For the period January 1, 2003 through the present, all documents showing or reflecting the liabilities of Melissa Friskney.

11. For the period January 1, 2003 through the present, all documents showing or reflecting the liabilities of Robert and Melissa Friskney.

12. All documents supporting Melissa Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against her.

13. All documents relating to Melissa Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against her.

14. All documents supporting Robert Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against him.

15. All documents relating to Robert Friskney's affirmative defenses and denials of the allegations of American Park & Play's claims against him.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was sent this 18th day of June, 2005, by facsimile ((561) 276-2522) and United States Mail, postage prepaid, to Michael J. Lavery, Esq., 4600 North Ocean Boulevard, Suite 201, Boynton Beach, Florida 33435.

Peter T. Mavrick
Florida Bar No. 008373

3

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 04-80457-CIV-RYSKAMP/VITUNAC

ROBERT FRISKNEY, on his own behalf,

     Plaintiff/Counter-Defendant,

v.

AMERICAN PARK & PLAY, INC.,
a Florida corporation, and

     Defendant/Counter-Plaintiff,

WAYNE CULBERTSON and
ELIZABETH CULBERTSON, individually,

     Defendants.

_____/

AMERICAN PARK & PLAY, INC.,

     Third-Party Plaintiff,

v.

MELISSA FRISKNEY,

     Third-Party Defendant.

_____/

**EXHIBIT 2**

## PLAINTIFF'S AND THIRD PARTY DEFENDANT'S RESPONSE TO DEFENDANT'S, AMERICAN PARK & PLAY, INC., SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiff, Robert Friskney, and Third Party Defendant, Melissa Friskney, through undersigned counsel, pursuant to Rule 34, Fed.R.Civ.P., serve this, their Response to Defendant's, American Park & Play, Inc., Second Request for Production and state the following:

1

1.      Objection, this request seeks work- product privileged information. Notwithstanding said objection, all documents obtained in response to subpoenas to third parties, if any, will be produced upon receipt.

2.      Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

3.      Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

4.      Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

5.      Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

6.      Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

7.      Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

2

8.     Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

9.     Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

10.     Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

11.     Objection, irrelevant, immaterial, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Further, this Request is only intended to harass and embarrass Plaintiff and Third Party Defendant.

12.     Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding and without waiving said objections, see documents previously produced in discovery.

13.     Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding and without waiving said objections, see documents previously produced in discovery.

14.     Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   Notwithstanding and without waiving said objections, see documents previously produced in discovery.

3

15.    Objection, vague, ambiguous, overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Notwithstanding and without waiving said objections, see documents previously produced in discovery.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served on this 18th day of July, 2005 to: Peter T. Mavrick, Esq., **Counsel for Defendants**, One East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33301

ROTHSTEIN ROSENFELDT ADLER
**Counsel for Plaintiff/Counter-Defendant**
**Robert Friskney and Defendant Melissa**
**Friskney**
300 Las Olas Place
300 S.E. 2nd Street
Suite 860
Fort Lauderdale, Florida  33301
Tel:    (954) 522-3456
Fax:    (954) 527-8663
Email: acappello@rra-law.com

By: _____
Stuart A. Rosenfeldt, Esq.
Florida Bar No.: 316113
Alana D. Cappello, Esq.
Florida Bar No.: 467847
FOR THE FIRM

H:\swrdocs\05-11531\Resp.RTP.Second.doc

4

## NINTH AFFIRMATIVE DEFENSE

Defendants assert the affirmative defense that Plaintiff has engaged in fraud, deceit, and breach of fiduciary duties, and falsely claims overtime hours worked when in fact Plaintiff was busy committing fraudulent acts.

## TENTH AFFIRMATIVE DEFENSE

Defendants assert the affirmative defense of estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendants assert the affirmative defense that of unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants assert the affirmative defense of set-off.

WHEREFORE, Defendants request that this action be dismissed and that they be awarded attorney's fees and costs pursuant to § 448.08, Florida Statutes.

## COUNTERCLAIM

**EXHIBIT 3**

### Preliminary Statement

Defendant/Counter-Plaintiff, AMERICAN PARK & PLAY, INC. (hereinafter referred to as "American Park & Play"), by and through its attorney, brings this action to remedy a pattern of misconduct by the Plaintiff/Counter-Defendant Robert Friskney (hereinafter referred to as "Friskney") and Third-party defendant Melissa Friskney, the full nature of which has been recently discovered.

### Jurisdiction and Venue

1.     American Park & Play invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims and against all parties that are so

7

related to claims in this action within the original jurisdiction of this Court that they form part of the same case and controversy.

2.      Venue is proper for the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. § 1391(b)(1), (2), and (c).

## Parties

3.      American Park & Play is a duly formed Florida Corporation, and at all times relevant herein a resident of the State of Florida, County of Broward. American Park & Play is a business of national repute that designs and installs playgrounds throughout the State of Florida and in other states within the United States.

4.      Robert and Melissa Friskney are individuals residing, upon information and belief, in Palm Beach County, Florida.

## Brief Facts

5.      On or about September 15, 2002, Friskney offered his services as an independent contractor to prepare and design a web-page for American Park & Play. Friskney represented to American Park & Play, specifically its President Beth Culbertson and CEO Wayne Culbertson, that he (i.e., Friskney) is a highly skilled web-page designer and that he would complete the project within four weeks. Based on Friskney's representation of his level of skill and ability to prepare and design its web-page, American Park & Play agreed to hire Friskney's services at the rate of $50.00 per hour for 25 hours a week to complete the web page design. Although Friskney told American Park & Play that his web-design work would be done through Friskney's company "CompDoc," he requested that he be paid by check made payable directly to Friskney.

8

6.      Friskney commenced work in September 2002, and appeared to be performing well.  American Park & Play provided Friskney all of the information he requested to build the web page.  Friskney also got along well with Beth and Wayne Culbertson.  Friskney emphasized to Beth and Wayne Culbertson that he wanted to help their company, and that they could trust him.  They believed him.

7.      On or about late-September/early-October 2002, Friskney presented another offer of his services to American Park & Play.  This time Friskney represented to American Park & Play that he (i.e., Friskney) is not only a highly skilled web-page designer, but also a highly skilled computer system designer, who has advanced knowledge and understanding of developing computer system design specifications for database management as well as software integration, computer hardware, hard-wire networking of computers, the creation of uniform templates for all matters of communication, and generally could be referred to as the streamlining and integration of the entire computer infrastructure.  Friskney offered to design and build American Park & Play's computer database, to include computer tracking of its bids on jobs, its progress of job completion, its list of customers, its list of prospective customers, its list of playground builders/contractors, its list of vendors, its invoicing procedures, its profit and loss statements, its cash-flow statements, its collections from customers, and other accounting matters.  Friskney emphasized that he was highly skilled in computer system design, and again emphasized that he was highly trustworthy to handle American Park & Play's confidential and sensitive corporate information.  Friskney saw the potential for a longer-term project with greater profit to himself by preparing the web-page design as well as designing and building American Park & Play's computer database.  Therefore,

9

Friskney offered to change his compensation arrangement to $25.00 per hour for 40 hours per week as an independent contractor on behalf of Friskney's alleged company "MBR Corp." Friskney requested that all checks be made payable to him personally. Unbeknownst to American Park & Play, MBR Corp. was a fictitious entity, and that was why Friskney demanded that all check be made payable to him personally.

8.      American Park & Play, and in particular its principals Beth and Wayne Culbertson, believed and trusted Friskney. Therefore, in October 2002, they agreed to enter an oral contract to hire Friskney's services as an independent contractor under the terms outlined in the previous paragraph. Friskney thanked Beth and Wayne Culbertson for trusting him with the task of performing the web-design and the design and building of the computer database for American Park & Play. Friskney also signed a non-competition agreement, in which he promised to be precluded competing with or soliciting business from any account of American Park & Play. A true copy of the non-competition agreement is attached hereto as Exhibit "A" and incorporated herein by this reference.

9.      In the ensuing months, including October – December 2002 and January – September 2003, Friskney insisted that he be allowed access to all parts and aspects of American Park & Play's business enterprise. Friskney represented to Beth and Wayne Culbertson that as the computer system designer and builder, Friskney needed access to all of American Park & Play's sensitive data, including its financial, customer, and all other sensitive data of American Park & Play: specifically, its list of customers, its list of prospective customers, its list of playground builders/contractors, its list of vendors, its invoicing procedures, its profit and loss statements, its cash-flow statements, its

collections from customers, and other accounting matters. Friskney repeatedly reminded Beth and Wayne Culbertson that they needed to trust him, and that he needed to see everything to properly design and build the computer database and computer infrastructure. Friskney insisted that he be allowed to assist in the drafting of job bids, job invoices, and to participate in customer contacts, participate in the engagement of outside builders for the playgrounds to be built for customers: all of this, Friskney repeatedly represented, was for the purpose of making the computer database design more user-friendly. Beth and Wayne Culbertson trusted Friskney, and therefore they agreed to allow Friskney repeated access to the sensitive corporate information. In the meantime, American Park & Play faithfully paid Friskney checks pursuant to the invoices he submitted to them weekly for 40 hours of weekly work at $25.00 per hour, for the web-site design and the design and building of American Park & Play's computer database.

10.    As the months passed by, Beth and Wayne Culbertson repeatedly asked Friskney how much longer was it going to take to arrive at a completed web-page and a functional and fully tailored computer database. Friskney repeatedly urged them to trust him and be patient, because he needed to learn more about the business of American Park & Play to fully tailor the database and make the database fully functional as well as the entire computer infrastructure, especially all aspects of software integration.

11.    In fact, Friskney was misusing the trust reposed in him by American Park & Play because he was making preparations to start a competing business to sell and install playgrounds. On or about April 2003, Friskney secretly formed a corporation to compete with American Park & Play in the playground business, and engaged in acts of

competition with American Park & Play.  Friskney also failed to keep his complete his

promised work to design and build American Park & Play's web-page and design, build,

and custom tailor American Park & Play's computer database and computer

infrastructure: the reason Friskney failed was because he lacked the high-level of

computer knowledge and skill that he had misrepresented to Beth and Wayne Culbertson.

In fact, a skilled designer and builder of web pages and computer databases would have

completed the job Friskney was hired for much earlier than the 44 weeks it took Friskney

never to complete either job.  Furthermore, Friskney spent less than the 40 hours each

week he had represented to American Park & Play he was working toward completion of

the web-page and database from October 2002 through September 2003.  In addition,

while simultaneously being paid by American Park & Play, Friskney was engaged with

the assistance of his wife, Melissa Friskney, in an illicit kick-back scheme with the

independent builders American Park & Play hired to install the playgrounds for its

customers, and thereby also acted in competition with American Park & Play by illicitly

raising its cost of doing business.  Under the guise of needing access to the bid

information and to have actual communication with the playground builders, Friskney

and his wife Melissa Friskney engaged in an illicit kick-back scheme whereby the

playground builders would compensate Friskney to get jobs from American Park & Play:

Friskney misrepresented to the playground installer-subcontractors that he was the "go

to" person or the point of contact for all construction jobs from American Park & Play,

and the installers would have to give him and his wife compensation to get the

construction jobs from American Park & Play.  The playground installer-subcontractors

included Eric Persyns, Kevin Cumisky, John DeFalco, and Darrell Lee.  Some of the

12

installers, including but not limited to Kevin Cumisky and John DeFalco, therefore acceded to Friskney's demands and proposals, and engaged in the kick-back scheme with Friskney, and ultimately charged American Park & Play more money or thereby received less money to build the playgrounds. In any event, Robert and Melissa Friskney interfered with American Park & Plays' business relationships with its builders. At the same time Friskney and his wife were interfering with American Park & Play's contracts with its playground installers, Friskney was billing the time spent on his fraud to American Play at $25.00/hour for the supposedly 40 hours a week he was performing work on the computer database. To make matters worse, Friskney claims credit toward overtime wages allegedly owed by American Park & Play for the time Friskney spent on his and his wife's fraudulent kick-back activities with American Park & Play's construction contractors.

12.     Eventually, American Park & Play made partial discovery of the foregoing. In or about September 2003, American Park & Play confronted Friskney with his failure to maintain the trust reposed in him, and terminated its business dealings with him. American Park & Play hired others to complete the jobs Friskney was paid to complete, and they completed the jobs within a few months.

**COUNT ONE**
**FRAUD: ABUSE OF CONFIDENTIAL AND FIDUCIARY RELATION**

13.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney.

14.     American Park & Play and Friskney entered into a principal and agent relationship, which was based on confidence and trust reposed by American Park & Play in Friskney and Friskney's acceptance of and indeed solicitation of that trust and

13

confidence. Friskney owed a fiduciary duty and a duty of good faith to American Park & Play to, among other things, use his best efforts to complete his work for American Park & Play, to tell American Park & Play the truth about Friskney's actual skills in web-site design and the design and building of computer databases, and to keep confidential and not use for Friskney's personal or business purposes American Park & Play's sensitive and confidential information used to allegedly build the computer database.

15.     Friskney breached the foregoing fiduciary duty and duty of good faith.

16.     Friskney's actions were done with malice and oppression.

17.     As a proximate result, American Park & Play suffered damages

18.     American Park & Play prays that this Court award it damages that include the sums it paid Friskney, impose a constructive trust on the monies it paid Friskney and the monies Friskney obtained by means of his illicit kick-back scheme, award American Park & Play punitive damages for Friskney's malice and oppression, award American Park & Play its costs, and any other relief this Court deems just.

## COUNT TWO
### DECEIT

19.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney.

20.     American Park & Play and Friskney entered into a principal and agent relationship, which was based on confidence and trust reposed by American Park & Play in Friskney and Friskney's acceptance of and indeed solicitation of that trust and confidence. Friskney deceived American Park & Play to by lying about Friskney's actual skills in web-site design and the design and building of computer databases and about

14

Friskney's promise to keep confidential and not use for Friskney's personal or business purposes American Park & Play's sensitive and confidential information used to allegedly build the computer database. In fact, Friskney used the foregoing confidential and sensitive business information of American Park & Play to engage in an illicit kick-back scheme that undermined American Park & Play, and also to create a competing business entity. In addition, Friskney's lies about his vaulted computer skills and trustworthiness and his lies about actually working 40 hours each week (when he really worked much less, and even then time was spent on illicit activities such as the kick-back scheme or starting his own competing corporation), caused American Park & Play to waste substantial sums of money paying Friskney when, in fact, they could have hired a web-page designer and designer and builder of its computer database who actually was so skilled and who would actually perform the work for which it would be paid.

21.     American Park & Play relied on Friskney's deceit, and as a proximate result, suffered damages.

22.     Friskney's actions were done with malice and oppression.

23.     American Park & Play prays that this Court award it damages that include the sums it paid Friskney, impose a constructive trust on the monies it paid Friskney and the monies Friskney obtained by means of his illicit kick-back scheme, award American Park & Play punitive damages for Friskney's malice and oppression, award American Park & Play its costs, and any other relief this Court deems just.

**COUNT THREE**
**FRAUD IN THE INDUCEMENT**

24.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney.

15

25.     Friskney misrepresented his computer skills in web-page design and the design and building of a computer database, his intended use of American Park & Play's confidential and proprietary business information, and that he would actually work 40 hours each week in accordance with the terms of this invoices each week reflecting 40 hours of work.

26.     American Park & Play relied on Friskney's misrepresentations, and American Park & Play was thereby induced to hire Friskney's services, give him access to their confidential and proprietary business information, and to pay Friskney for 40 hours of work each week.

27.     Friskney's actions were done with malice and oppression.

28.     As a proximate result, American Park & Play suffered damages

29.     American Park & Play prays that this Court award it damages that include the sums it paid Friskney, impose a constructive trust on the monies it paid Friskney and the monies Friskney obtained by means of his illicit kick-back scheme, award American Park & Play punitive damages for Friskney's malice and oppression, award American Park & Play its costs, and any other relief this Court deems just.

## COUNT FOUR
## BREACH OF WEB-PAGE AND DATABASE CONTRACT

30.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney.

31.     American Park & Play voluntarily entered into a contract with Friskney to design and build American Park & Play's web-page and database.

16

32.     American Park & Play fulfilled all of its obligations under the contract, and paid Friskney all he was owed.

33.     Friskney breached that express contract by not putting in the required number of hours, not completing the project, and by not having the skill he claimed to have as an inducement to enter the contract.

34.     As a proximate result, American Park & Play suffered damages.

35.     American Park & Play prays that this Court award it damages that include the sums it paid Friskney, award American Park & Play its costs, and any other relief this Court deems just.

## COUNT FIVE
## BREACH OF NON-COMPETITION CONTRACT

36.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney.

37.     American Park & Play voluntarily entered into a non-competition contract with Friskney, a true copy of which is attached hereto as Exhibit "A."

38.     American Park & Play fulfilled all of its obligations under the contract, and paid Friskney all he was owed.

39.     Friskney breached that contract.

40.     As a proximate result, American Park & Play suffered damages.

41.     American Park & Play prays that this Court award it damages that include the sums it paid Friskney, award American Park & Play its attorneys fees and costs, and any other relief this Court deems just.

## COUNT SIX
### UNJUST ENRICHMENT

42.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney.

43.     Friskney has been unjustly enriched through receipt of weekly payments from American Park & Play and from the illicit kick-back scheme Friskney engaged in with the playground installer-subcontractors hired by American Park & Play.

44.     Friskney's actions proximately caused damages to American Park & Play.

45.     American Park & Play prays that this Court award it damages that include the sums it paid Friskney, award American Park & Play its costs, and any other relief this Court deems just.

## COUNT SEVEN
### TORTIOUS INTERFERENCE WITH AMERICAN PARK & PLAY'S ADVANTAGEOUS BUSINESS RELATIONSHIPS WITH BUILDERS ERIC PERSYNS, KEVIN CUMISKY, JOHN DEFALCO, AND DARRELL LEE

46.     American Park & Play re-alleges Paragraphs 1 through 12 as if fully stated herein, and brings this count against Robert Friskney and Melissa Friskney.

47.     American Park & Play had advantageous business relationships with playground installer-subcontractors Eric Persyns, Kevin Cumisky, John DeFalco, and Darrell Lee.

48.     Robert and Melissa Friskney had knowledge of those business relationships.

49.     Robert and Melissa Friskney intentionally and unjustifiably interefered with those business relationships

50.     Robert and Melissa Friskney's actions were done with malice and oppression

51.     As a proximate result, American Park & Play suffered damages.

52.     American Park & Play prays that this Court award it damages, impose a constructive trust on the monies and other property Robert and Melissa Friskney received pursuant to their tortuous interference, award American Park & Play punitive damages for Friskney's malice and oppression, award American Park & Play its costs, and any other relief this Court deems just.

## JURY TRIAL DEMANDED

American Park & Play, Beth Culbertson, and Wayne Culbertson hereby demand trial by jury of all issues triable by right.

Dated: December 15, 2004      Respectfully submitted,

PETER T. MAVRICK, P.A.
Attorney for Defendant/Counter-Plaintiff
American Park & Play, Inc.
and Defendants Beth and Wayne Culbertson
One East Broward Boulevard
Suite 700
Fort Lauderdale, Florida 33301
Telephone:  (954) 564-2246
Facsimile:   (954) 523-2226
E-Mail: pmavrickesq@yahoo.com

BY:  _Peter T. Mavrick_
Peter T. Mavrick
FL Bar No.: 0083739

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-80457-CIV-RYSKAMP/VITUNAC

ROBERT FRISKNEY,                              )
Plaintiff/Counter-Defendant,                 )
                                             )
v.                                           )
                                             )
AMERICAN PARK & PLAY, INC.,                  )
a Florida corporation                        )
Defendant/Counter-Plaintiff and             )
WAYNE CULBERTSON, individually, and         )
BETH CULBERTSON, individually,               )
Defendants.                                  )
                                             )
_____              )
                                             )
AMERICAN PARK & PLAY, INC.                   )
Third-Party Plaintiff,                       )
                                             )
v.                                           )
                                             )
MELISSA FRISKNEY,                            )
Third-Party Defendant.                       )
_____              )

## AFFIDAVIT OF ERIC PERSYNS

BEFORE ME, the undersigned authority, this day personally appeared ERIC

PERSYNS, affiant, who, being duly sworn deposes and says:

1.      I have personal knowledge of everything in this affidavit.

2.      During the period January 2003 – August 2003 (hereinafter referred to as the

"Time Period"), I was an independent contractor installer who preformed installation

1

**EXHIBIT** 4

work for American Park & Play, Inc. (hereinafter referred to as "American Park & Play")

on the following jobs: Cypress Head, Marquesa, and Miami Seaqarium.  At that time I

knew Robert Friskney (hereinafter referred to as "Friskney") was the computer consultant

for American Park & Play, and I also knew Friskney personally.  During the Time Period,

Friskney told me that he would cause American Park & Play's computer system to

increase the normal job bid for Cypress Head, Marquesa, and Miami Seaqarium by

$500.00 per job, and that he would steer the work in American Park & Play's work orders

to me if I would pay him back the extra $500.00 he was charging American Park & Play

for the job.  At Friskney's house (at which he lived and shared with his wife Melissa

Friskney), Friskney also told me that if I did not return the extra $500.00 per job to him,

then he would ensure that another independent contractor would get the work.  Friskney

used American Park & Play's computer system to alter the purchase orders to enhance by

$500.00 the expense paid by American Park & Play to me on each of the Cypress Head,

Marquesa, and Miami Seaqarium jobs, and in turn I returned to Friskney the extra

$1,500.00 Friskney received from those three jobs.  Friskney insisted I pay him in cash,

and I did so.  I understood the foregoing sums were kick-backs to Friskney I made to

obtain installation work.

3.      At Friskney's house in the presence of his wife Melissa Friskney, Friskney also

told me that he wanted instead of my paying him directly for obtaining installation work

for American Park & Play, he wanted me instead to issue a paycheck from my installation

business to his wife Melissa Friskney, to be the accountant for my installation business.

At that time, Friskney told me that Melissa Friskney would not actually perform the

accounting work, but instead she would merely receive the check from me as if she had

really performed the accounting work.

4.      FURTHER AFFIANT SAYETH NOT.

ERIC PERSYNS

STATE OF FLORIDA      )
COUNTY OF BROWARD)

SWORN TO and subscribed before me on _____ , 2005 by

_____ _____ has produced
_____ _____ as identification.

NOTARY PUBLIC
State of Florida, at Large

DEBORAH JO HAY
MY COMMISSION # DD 356745
EXPIRES: October 29, 2008
Bonded Thru Notary Public Underwriters

3